IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>DOUGLAS LYNN CARTER,<br><br>  Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:18-cr-268<br><br>Judge Clark Waddoups |

On October 20, 2020, the court denied a Motion for Compassionate Release filed by Defendant Douglas Lynn Carter. Mr. Carter now seeks reconsideration of the court's ruling. Having reviewed Mr. Carter's additional facts and arguments, the court again denies Mr. Carter's motion.

## BACKGROUND

**COVID Conditions**

Mr. Carter asserts he should be released due to COVID-19 conditions at the prison. During the first round of briefing on this matter, the government detailed the steps the Bureau of Prisons has taken to protect inmates from COVID. Mem. in Opp'n, at 2–6 (ECF No. 47).[1] Despite those efforts, Mr. Carter asserts the FCI Englewood facility, where he is assigned, had a massive COVID outbreak. At least "655 of the 680 inmates housed at the facility tested positive for the . . . virus."

---

[1] When the court cites to the record, it refers to the ECF pagination at the top of the page and not to pagination at the bottom of the page.

Mot. to Reconsider, at 2 (ECF No. 51). Mr. Carter was one of them, but his symptoms were mild. *Id.* With overcrowding, lack of access to the vaccine, variants that are emerging, his age, and his underlying medical conditions, Mr. Carter contends he remains at high risk for contracting the virus again and experiencing more serious health consequences. *Id.* at 2–4. He further contends it is cruel and unusual punishment to subject him to such conditions because he was not sentenced to death, but the virus is deadly to some. *Id.* at 3–4.

**Criminal Background and Wife's Condition**

On April 4, 2018, Mr. Carter was arrested and taken into State custody for possession of child pornography and being a felon in possession of a firearm. Presentence Rpt., at 2, 5 (ECF No. 23). After Mr. Carter transferred to Federal custody, the court detained him because he posed a danger to the community. Minute Entry (ECF No. 14); Hr. Recording, at 2:34:12 to 2:41:45. Mr. Carter has an extensive history of sexual offenses against children, which heightened the seriousness of the child pornography charge, such that he faced a 10-year mandatory minimum sentence for that crime. Presentence Rpt., at 5, 14 (ECF No. 23).

On August 2, 2018, Mr. Carter entered a guilty plea for being a felon in possession of a firearm, with an agreed sentence range of 60 to 96 months under a Rule 11(c)(1)(C) agreement. Statement in Advance of Plea, 1, 4 (ECF No. 20). In exchange for his plea, the government agreed "to move for leave to dismiss" the child pornography charge. *Id.* at 4. Six day later, on August 8, 2018, Mr. Carter's wife was placed on hospice "with a life expectancy of six months or less." Hospice Lttr., at 1 (ECF No. 54). His wife has cerebral palsy and other conditions that incapacitate her. Med. Rec., at 2–3 (ECF No. 41-4); First Step Act Rpt., at 5 (ECF No. 46). Mr. Carter acted as her primary caregiver prior to his arrest. First Step Act Rpt., at 5.

In preparation for sentencing, Mr. Carter sent the court a letter, wherein he asked the court for mercy so he could spend time with his wife until she passed. Def.'s Lttr., at 4 (ECF No. 54). He suggested, "[m]aybe you can allow me to remain out with her until she passes away then put me in prison for the rest of my life." *Id.*

In the same letter, Mr. Carter acknowledged a sexual addiction resulting "in many victims" and lengthy terms of incarceration. *Id.* at 2. Following his release from prison in 2012 for a sexual assault, Mr. Carter committed not to engage in direct crimes against children again. *Id.* at 2–3. He sought counseling "between 2013 and 2015," Presentence Rpt., at 12 (ECF No. 23), and asserts he has been successful in not repeating his past behavior towards direct victims. Def's Lttr., at 3. Nevertheless, he admitted "he had been accessing child pornography online for several years" prior to his arrest in April 2018. Presentence Rpt., at 5. Due to that conduct, he came "so close to relapsing." Def.'s Lttr., at 3.

Despite his history and continuing sexual addiction, in December 2018, the court was persuaded at sentencing to release Mr. Carter from custody and delay his report date to prison so he could spend time with his wife before she passed. The court ordered Mr. Carter to self-surrender on June 10, 2019 (six-months after sentencing) or within one month of his wife's death. Amended Conditions, 1 (ECF No. 35). The court was informed that Mr. Carter and his wife would reside at the home of a friend, and Pretrial Services confirmed the safety of the home.

Unbeknownst to the court, Mrs. Carter was placed in a long-term care facility on November 6, 2018. Med. Rec., at 2 (ECF No. 41-4) (listing admission date). She did not reside with Mr. Carter at the friend's home. Instead, residents of the care facility reported that "he would come pick her up everyday and take her out shopping, out to eat, to get her hair done . . . from 9:00 am

3

to 9:00 pm." Residents Lttr., at 1 (ECF No. 40). He also helped with her laundry. *Id.* Although it appears he had active involvement in her care, it was under circumstances different than what was reported to the court at sentencing. Mr. Carter is not his wife's only available caretaker.

Nevertheless, as an alternative ground for compassionate release, Mr. Carter asserts he should be released to care for his wife. Addendum, at 2 (ECF No. 52). He asserts since he self-surrendered in June 2019, his wife's care has been neglected at the facility. *Id.* at 1–2. He asserts if he were released, he would bring her home and be her primary care giver with the assistance of a home health aide. *Id.* at 2. He contends his release would be beneficial for the health of both of them and economically better to taxpayers. *Id.* Mr. Carter provided no evidence to support his contentions about the neglect of his wife's care.

## ANALYSIS

**I. EXTRAORDINARY AND COMPELLING REASONS**

As stated in the court's prior ruling, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow a defendant to file a motion for modification of a term of imprisonment after exhausting administrative remedies.[2] A "court *may* reduce a term of imprisonment . . . if, after considering

---

[2] The warden at FCI Englewood denied Mr. Carter's application for compassionate release. Denial, at 6 (ECF No. 41-2). His appeal also was denied. Appeal, at 4 (ECF No. 41-3). It does not appear Mr. Carter pursued the next level of appeal. Instead, he moved the court for compassionate release. "Following passage of the First Step Act, . . . a defendant may move in the district court for compassionate release under § 3582(c)(1)(A) if (1) he has fully exhausted all administrative remedies, *or* (2) 30 days have elapsed since he requested such a reduction from the warden of his facility." *United States v. Heath*, No. 20-6138, 2021 U.S. App. LEXIS 6457, at *2 (10th Cir. Mar. 5, 2021) (emphasis in original). Although the Tenth Circuit noted these provisions, it does not appear the Court has directly addressed how the 30-day provision applies. The United States accepted, however, that Mr. Carter satisfied the exhaustion requirement based on the 30-day provision. Mem. in Opp'n, at 8 (ECF No. 47); *see also* Supp. to Def's Pro Se Mot. for

the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that" extraordinary and compelling reasons exist to reduce the sentence, *and* "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." United States Sentencing Guidelines, § 1B1.13 (2018) (emphasis added); *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (noting reduction warranted if extraordinary and compelling reasons exist); 18 U.S.C. § 3553(a)(2) (assessing "the need for the sentence imposed . . . to protect the public from further crimes of the defendant").

The Sentencing Commission has determined that if a prisoner has a serious medical condition that substantially diminishes a person's ability for self-care at the correctional facility, it constitutes an extraordinary or compelling reason to reduce a sentence. Mr. Carter's medical conditions do not satisfy this requirement. Nor does his wife's situation satisfy the extraordinary conditions because she has alternative care and has been receiving such care since November 2018.

COVID, however, has added other considerations based on risk factors faced by a prisoner. The court assumes, without deciding, that Mr. Carter has presented sufficient information to show that extraordinary and compelling reasons exist to reduce his sentence based on the COVID risk factors. The court now considers the § 3553 factors and whether Mr. Carter poses a danger.

II.     **SECTION 3553 FACTORS AND DANGER TO COMMUNITY**

Mr. Carter has had multiple past convictions and parole violations for sexual assaults and other crimes. He has admitted to other sexual offenses for which he was never arrested or charged.

---

Compassionate Release, at 1–2 (ECF No. 42) (same). Applying the statute's plain meaning, this court concludes Mr. Carter satisfied the exhaustion requirement before filing his original motion for compassionate release.

To his credit, he sought counseling and has made efforts to change his behavior and thought patterns. Nevertheless, on April 4, 2018, Mr. Carter was arrested again and admitted to possessing child pornography. That crime carried a mandatory minimum sentence of ten years due to his past sexual offenses. He also possessed a firearm despite being a convicted felon. Mr. Carter's plea of guilty to the firearm charge allowed him to be sentenced to five years imprisonment. Five years less than he would have served under the mandatory minimum. Moreover, the five-year sentence was at the bottom of the sentencing range agreed to in the Rule 11(c)(1)(C) agreement. Finally, Mr. Carter was allowed six-months to self-report to afford him additional time with his wife.

While incarcerated, Mr. Carter has "taken many classes at the prison's resource center." Addendum, at 2 (ECF No. 52). Mr. Carter has also expressed a commitment to abide by the law when released because he regrets the choices he made. *Id.* For the sake of Mr. Carter, his family, and society, the court sincerely hopes he will remain committed to this path. At present, however, the totality of the § 3553 factors do not warrant early release. In particular, Mr. Carter's criminal history, his possession of child pornography despite repeated prison terms for other sexual offenses, and the seriousness of the crime show the need exists to protect the public from further crimes by him. His sentence and the delayed period for self-reporting already reflect leniency. A further reduction would disregard the seriousness of Mr. Carter's criminal conduct.

Although the court was persuaded to release Mr. Carter from detention due to his wife's situation, that release was temporary. It was based on a unique set of circumstances that existed at that time. Based on the totality of the § 3553 factors and the specific need to protect the public from further crimes by Mr. Carter, the court concludes reducing Mr. Carter's sentence further is not warranted.

## **CONCLUSION**

For the reasons stated above, the court DENIES the Motion for Reconsideration (ECF No. 51).

DATED this 29th day of March, 2021.

BY THE COURT:

Clark Waddoups
United States District Judge